PAYNE
*vs.*
VANDEVER, &c.

---

Case 3.

ORD. PET.

## Payne *vs.* Vandever, &c.

### APPEAL FROM PENDLETON CIRCUIT.

1. An attornment by a tenant of the possession of the land of his landlord, without the consent of the latter, is void. (*Stat. Law*, 444.) And if superinduced by a fraud upon the tenant, is voidable by him. (1 *A. K. Marshall*, 558.)
2. If a tenant attorn to a stranger without the consent of his landlord he, or one claiming under him, may disavow it. The maxim, "*in pari delictu potior est conditio defendentis*," will not prevent. The maxim, "*Ex turpi causa non oritur actio*," shall rather prevail.
3. Questions of fact should be left to the jury and not decided by the court.

Case stated.

The appellees brought their petition to recover the possession of a tract of land lying in Pendleton county. They exhibited no evidence of title, but relied upon the fact that one Anderson, who was in possession of the land, had taken from them a lease for three years of the land, and before expiration of that lease sold the land to appellant, and put him in possession, and that Payne disputed their title. The defendant moved the court to instruct the jury to find for defendant, as in case of non-suit, which was overruled; defendant then read to the jury a patent from the commonwealth of Virginia to Littleberry

Mosby, and proved that it covered the land; and offered evidence conducing to prove that one Gosney, acting as the agent of Mosby, placed one Morris in possession of the land as tenant; that Morris put one Bonar in possession, and he put Anderson in possession, and he put the defendant in possession. And upon this state of fact defendant insisted that the attornment of Anderson was void, and that the possession was with the patentee, Mosby, and the title in him. A verdict and judgment was rendered in behalf of the appellees, and the appellant brought the case up for revision. Sundry errors are alledged to have occurred in the progress of the trial. 1. In refusing to exclude a deed offered by plaintiff from Tibbatts, because it was not proved that it covered the land in contest. 2. In refusing to instruct the jury to find as in case of non-suit. 3. In giving improper instructions to the jury. 4. In overruling the motion of appellant for a new trial.

*Garret Davis* for appellant—

Argued: 1. That the appellees wholly failed to make out their right to recover. They made no exhibit of any title, but relied upon the fact that Anderson, while in possession of the land, had taken a lease from them for three years, and before the expiration of that lease sold the land to Payne, who now held in opposition to their claim, and denied their right.

The appellant read a patent from the state of Virginia to Littleberry Mosby, and proved that it covered the land in contest. And farther proved that one Gosney, acting as the agent of the patentee, had put a man by the name of Morris in possession as tenant, who sold to one Bonar, and he sold to Anderson, who took the lease from the appellees, and sold to Payne, the appellant. Upon these facts, the attornment of Anderson being void, the appellees derived no right to the land from it, and the possession as held is the

possession of the patentee or his heirs. (See *Stat. Laws,* 444.)

2. The court erred in permitting the appellees to read to the jury the deed from Tibbatts to them, without any proving that it covered the land in dispute.

3. The court should have, as moved by the appellants' counsel, instructed the jury to find for the defendants.

4. The court erred in its instructions to the jury as asked by the appellees, and refusing those asked by appellant.

*E. H. Phelps* on the same side—

The sole ground relied on by appellees for a recovery, is upon the fact that Anderson had, while in possession of the land in contest, taken a lease from them, and become their tenant, and could not now controvert their title. This cannot avail, as he was at the time the tenant of the legal title holder.

The position assumed by the appellees before the circuit court cannot avail. The proof shows clearly that Anderson, when he took the lease, if one was taken, was in legal contemplation the tenant of Mosby, and any surrender to appellees was void in law, and ineffectual to divest Mosby of possession.

*W. C. Marshall* for appellees—

1. The appellees rely for a recovery on the fact that Anderson was their tenant, and while in possession as their tenant, and before the expiration of that lease, sold to appellant, who purchased with a knowledge that Anderson was the tenant of the appellees. Having, then, entered as the tenant of appellees, and under their title, it is insisted that he cannot rightfully hold over and deny their title.

2. The proof shows that the appellees purchased the land in contest from Tibbatts, with the consent of Anderson, after Tibbatts and Winston had settled the controversy between Tibbatts and Mosby. Win-

ston while in possession, claiming to hold for Mosbys as their ágent, and exercising acts of ownership over the land, agreed with Tibbatts to settle the dispute. Whether Winston had power to do so or not, it was done—a line run, and Tibbatts placed in possession—and Tibbatts put the appellees in possession with the consent of Anderson, who claimed the mere improvements by purchase. Under these circumstances, could he, or those claiming under him, contest the title thus acknowledged by him? This point has been repeatedly settled. This is the whole case. The principles involved have been repeatedly settled by this court, as to the law as given by the court upon the facts found by the jury.

PAYNE<br/>vs.<br/>VANDEVER, &c.

Chief Justice MARSHALL delivered the opinion of the court:

June 9.

There was evidence in this case conducing to prove, and on which the jury might have found, that the land now sought to be recovered, was once in possession of Morris, by permission of Gosney, acting as the agent of Mosby, to whom a patent including it had issued in 1787, and that he held the possession by lease, or otherwise, under Mosby, through Gosney as his agent; that Morris had transferred the possession to Bonar, who had transferred it to Anderson, who, while thus in possession, took a lease for the same land from the plaintiffs, who claimed under Tibbatts; that during the continuance of this lease, which was for three years, Anderson sold to the defendant, Payne, who claimed the land as his own under the purchase, and disclaimed the plaintiffs' title, and that the lease had expired before the commencement of this suit. · The lease, however, was not produced, but the only witness who spoke of it said he wrote it—that it had been left in his custody by the parties to it, and that it was lost. The defendant read Mosby's patent, which was the only one exhibited, and there was some evidence tending to show that Morris had not obtained possession from Gosney. The plaintiffs also exhibited a deed from

Tibbatts to them, said to cover the land, but showed no title in Tibbatts.

On this evidence the court instructed the jury to the effect that if Anderson accepted from plaintiffs a lease, which had expired before the institution of the action, Anderson, and if the defendant, Payne, entered under him with knowledge of the lease, the defendant, also, was estopped to controvert the plaintiffs' title, &c.

The plaintiffs had no shadow of right to recover unless by the estoppel here declared. If the estoppel as to the defendant depended upon his having actual knowledge of the lease, there is not the slightest evidence that he had such knowledge. The witness who wrote it, and seems to have had it in his custody from the time it was executed, if it was in fact executed, gives no intimation that it was ever seen or heard of by the defendant. And on this ground, if the instruction is right, and a knowledge of the lease was necessary to fix the estoppel on the defendant, the verdict is wrong because, as to this fact, it was without evidence to sustain it. But the instruction, whether right or wrong with respect to the necessity of the defendant's having a knowledge of the lease in order to subject him to estoppel, if there was one upon Anderson, withdraws from the jury, and gives no effect to the evidence first stated, from which they might have inferred that Anderson was under a previous estoppel to Mosby's title under which the possession was taken or held. The jury might have found that this possession had been held by Morris, and transmitted through Bonar to Anderson, under such obligations to the title of Mosby, as made his attornment to the plaintiffs by taking a lease from them, a fraud upon Mosby denounced by statute as illegal and void. And upon comparison of the instruction with the evidence, the question necessarily arises, whether a claimant of land being a party to such an illegal transaction intended to defraud and injure another, or whether so intended or

1. An attornment by a tenant, of the possession of the land of his landlord, without the consent of the latter, is void. (*Stat. Law,*444.) And if superinduced by a fraud upon the tenant, is voidable by him. (1 *A. K. Marshall,* 558.)

not, certainly having that tendency, and actually illegal and void, can take advantage of the same illegal transaction to recover the land even against the other party to it.

The 16th section of the act of 1796, regulating conveyances, (*Stat. Laws*, 444,) declares the attornment of the tenant to a stranger void, unless with consent, &c.　In the case of *Morgan vs. Ballard*, 1 *A. K. Marshall*, 558, this court decided that a tenant might defeat an action brought upon a contract by which he had covenanted to surrender to the plaintiff certain premises, by a plea showing that he held them as tenant of another, and that the plaintiff, knowing this fact, had by persuasion, misrepresentation, and by asserting that he had a better title, and would turn him out, induced him to attorn, &c.　The opinion in that case lays no stress upon the particular averments as to the manner in which the execution of the covenant had been induced, but sustained the conclusion in favor of the plea by considerations growing out of the importance of the relation of landlord and tenant, and of maintaining the fidelity essential to it; and besides noticing the positive denunciation of the statute, declaring a contract based upon the violation of good faith in this relation, contemplating a divestiture of the possession of the landlord by the perfidy of the tenant, to be corrupt in principle and void in law.

*Ex turpi causa non oritur actio*, is a maxim of the law essential to the maintenance of its own integrity. The law cannot sanction a transaction or enforce a contract having for its object or consideration a violation of good faith and of its own mandate.　It therefore allows one of the parties to such a transaction to defeat the enforcement of a right claimed under it, even by showing his own criminality.　And this it allows, not out of regard to the individual, but to maintain itself.　Hence the rule, *in pari delictu potior est conditio defendentis*, must be of the same universal application as the maxim before quoted.　It

PAYNE
*vs.*
VANDEVER, &c.

2. If a tenant attorn to a stranger without the consent of his landlord, he, or one claiming under him, may disavow it.　The maxim "*in pari delictu potior est conditio defendentis*," will not prevent.　The maxim, '*Ex turpi causa non oritur actio*.' shall rather prevail.

was upon these principles that in the case of *Morgan vs. Ballard, supra,* the defense of Ballard was sustained. And upon the same principles, as we think, Anderson, if he were the defendant in this action, might defeat it, by showing that the supposed estoppel on which alone it is founded is claimed as growing out of a transaction corrupt and illegal, and which for the protection of interests deemed of great importance, and for the good of society, the law has denounced as absolutely void.

The estoppel, if it exists in this case, is but the legal result or effect of the contract by which Anderson became the tenant of the plaintiffs, and bound himself to surrender the possession to them at the expiration of his term. If he was the tenant of Mosby, holding the possession for him and under his title, such a contract, unless made with Mosby's consent, or under the mandate of a court, was void by express declaration of the statute; and it seems utterly unreasonable to suppose either that a void contract could impose a legal obligation for its own performance, or that without such obligation the law would create or recognize an estoppel as a means of coercing performance.

Then, as the plaintiff has no shadow of title in himself, and no ground of recovery but by force of the lease, and the obligation and estoppel supposed to grow out of it, his action claiming the land upon that ground alone, whether brought against Anderson, or against Payne as having derived the possession from Anderson, is (upon the hypothesis assumed, and which the jury had a right to find upon the evidence,) nothing more or less than an action upon an immoral, illegal and void contract, brought, not to recover damages for its breach, as in the case of *Morgan vs. Ballard,* but for its specific enforcement by a delivery of the possession. Of what avail would be the declaration that the contract is void, if the law would enforce it against a party who shows and relies upon the facts on which the law declares it to be void?

If on any ground the law could be thus suicidal, it would at least seem that the doctrine of estoppel, which is founded in a regard to good faith, the preservation of which is its principal object, should not, under the semblance of enforcing good faith, be made the instrument of at once effectuating a violation of the law, and defeating the higher obligations of good faith which imposed a real estoppel.

If Anderson was under estoppel to the title of Mosby, his attornment to the plaintiffs, and undertaking either expressly or impliedly to deliver the possession to them, was illegal and void. It therefore neither relieved him from the existing estoppel, nor imposed any new one. He would, consequently, have been at liberty to deny the title of the plaintiffs, or to defeat it by showing a better one outstanding, or in Mosby, for whom he was bound to to maintain the possession. Payne, who was under the same obligations to Mosby's title, and was no party to the illegal attornment and contract, had of course equal rights, which he might freely exercise, whether ignorant or cognizant of the lease from the plaintiffs. If there be a presumption that he knew how Anderson held, the legal presumption would be (upon the hypothesis assumed) that he knew him to be holding under Mosby; and if he knew of the void attornment, the presumption should be that he considered it void, and at any rate he was not affected by it.

We are of opinion, therefore, that the instruction which has been stated, is erroneous in not submitting to the jury the question arising upon the evidence, whether Morris derived or held possession under an agreement with Mosby, or with Gosney as his agent, by which he became his tenant or was bound to hold the possession for him, and whether this possession was transmitted to Bonar, and by him to Anderson, and in instructing them without reference to these questions, and upon the facts stated in the instruction, if they believed them from the evi-

3. Questions of fact should be left to the jury, and not decided by the court.

dence, that Anderson and the defendant were estopped, &c.

Wherefore the judgment is reversed, and the cause remanded for a new trial in conformity with the principles of this opinion.